Filed 8/21/23

CERTIFIED FOR PUBLICATION

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| In re R.F. et al., Persons Coming Under the Juvenile Court Law. | |
| RIVERSIDE COUNTY DEPARTMENT OF PUBLIC SOCIAL SERVICES, | E079941 |
| Plaintiff and Respondent, | (Super.Ct.No. RIJ1700147) |
| v. | OPINION |
| M.F., | |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County.  Mona M. Nemat, Judge. Reversed with directions.

Jesse McGowan, by appointment of the Court of Appeal, for Defendant and Appellant.

Minh C. Tran, County Counsel, Teresa K. B. Beecham and Julie K. Jarvi, Deputy County Counsel, for Plaintiff and Respondent.

1

# I. INTRODUCTION

Appellant M.F. and her husband, J.F., are the paternal grandparents (PGPs) of R.F. and B.F. In October and November 2021, the juvenile court terminated parental rights to the children and selected adoption as the children's permanent plans. (Welf. & Inst. Code, § 366.26, subd. (c)(1).)[1] In section 366.26 reports for each child, respondent Riverside County Department of Public Social Services (DPSS) recommended that the court designate the PGPs as the children's "prospective adoptive parents" (PAPs). (§ 366.26, subd. (n)(1).) But at the section 366.26 hearing for B.F., on October 1, 2021, minor's counsel raised a concern about J.F.'s alcohol abuse; and, on October 19, J.F. tested positive for methamphetamines and amphetamines.

On March 11, 2022, DPSS removed the children from the PGPs' home on an emergency basis—that is, without advance notice to the court, the minors' counsel, and the PGPs, based on DPSS's determination that the children were at "immediat[e] . . . risk of physical or emotional harm." (§ 366.26, subd. (n)(4).) On March 11, DPSS filed a Judicial Council form JV-324 (notice of emergency removal) for each child, stating that the removals were "due to methamphetamine used by [J.F.]. He submitted a [hair] follicle test and produced high levels of methamphetamine." Together with the notice forms (JV-324), DPSS filed a form JV-326 (proof of notice under section 366.26(n)) for each child, stating that M.F. was given notice of the removals "orally, in person" on March 11.

---

[1] Undesignated statutory references are to the Welfare and Institutions Code.

The proofs of notice (forms JV-326) did not show that M.F. was given: (1) copies of the notices of emergency removal (forms JV-324) that DPSS filed on March 11, (2) blank copies of forms JV-325 (objection to removal), or (3) blank copies of forms JV-321 (request for prospective adoptive parent designation). (Cal. Rules of Court, rule 5.728(c)(4).)[2] The notices (forms JV-324) would have informed M.F. that she had a right to request a hearing on the removals by "filling out" and "filing" form JV-325 (objection to removal) no later than "five court days or seven calendar days, whichever is longer" from the date M.F. received "this notice"—that is, from the date M.F. received the form JV-324. (§ 366.26, subd. (n)(4); rule 5.728 (c).)[3]

Later in March 2022, M.F. went to the courthouse to ask whether she could "do anything," and she was told she could file an objection to removal on form JV-325. On March 25, M.F. filed a form JV-325 for each child, requesting a hearing on the removals, and claiming the children would suffer psychological and emotional harm the longer they were separated from M.F.'s family. The juvenile court never set a hearing on the

---

[2] Undesignated references to rules are to the California Rules of Court.

[3] M.F. has requested that we take judicial notice of Judicial Council form JV-323 (notice of intent to remove child). (Evid. Code, §§ 452, subd. (c), 459, subd. (a); *In re Trenton D.* (2015) 242 Cal.App.4th 1319, 1324, fn. 2 [taking judicial notice of Judicial Council forms].) We grant the request and, on our own motion, take judicial notice of the additional "mandatory" Judicial Council forms, which are required to be used in removals governed by section 366.26, subdivision (n): form JV-321 (request for prospective adoptive parent designation); form JV-324 (notice of emergency removal); form JV-325 (objection to removal); and form JV-326 (proof of notice under section 366.26(n)). (Rules 5.727 [proposed removal], 5.728 [emergency removal].) We also take judicial notice of forms JV-322 (Confidential Information-Prospective Adoptive Parent) and JV-326-INFO (Instructions for notice of hearings under section 366.26(n)).

removals. (§ 366.26, subd. (n)(4).) The record does not show that the court overruled, or took any other action, on M.F.'s March 25 objections to the removals (forms JV-325). (*Ibid*.)

On September 1, 2022, M.F., through an attorney, filed a section 388 petition for each child, asking the court to return the children to her care and claiming she was never notified of her right to file objections to, and request a hearing on, the removals. (§ 366.26, subd. (n)(4).) M.F. averred she "never was served with any notices or court forms which informed [her] of [her] right to object to the removal[s] and have a court hearing." On September 7, the court denied the petitions, without a hearing, on the grounds: (1) M.F. was provided with notice of the removals on March 11, (2) thus, M.F.'s objections were untimely filed, and (3) a hearing on the removals was discretionary, not mandatory, pursuant to section 366.26, subd. (n)(3).

M.F. appeals from the orders denying her section 388 petitions. We reverse the orders and remand the matter with directions to the juvenile court to hold a noticed hearing on the children's March 11, 2022 removals. (§ 366.26, subd. (n)(3)-(4).) At the hearing, the court is to determine whether the emergency removals "should be made permanent," considering the circumstances as they exist at the time of the hearing, not as they existed at the time of the March 11 removals. (*State Dept. of Social Services v. Superior Court* (2008) 162 Cal.App.4th 273, 287 (*State Dept. of Social Services*).)

4

## II. ADDITIONAL BACKGROUND

A. *The Children's Long-term Placements with the PGPs*

DPSS took B.F. into protective custody in March 2020, when B.F. was two years old. B.F.'s parents were abusing methamphetamine and heroin, and B.F's father was also abusing alcohol. B.F. was initially placed in foster care. M.F. appeared at the March 2020 detention hearing for B.F., and requested B.F.'s placement. In May 2020, DPSS approved M.F.'s home and placed B.F. with M.F. R.F. was placed with M.F. in September 2020, shortly after R.F. was born.

In each child's case, the court assumed jurisdiction (§ 300, subd. (b)), removed the child from parental custody, bypassed services for the mother (§ 361.5, subd. (b)(10), (11)), and terminated the father's services after the father failed to participate. In April 2021, the PGPs were approved to adopt the children under the "resource family approval" guidelines. (§ 16519.5; see *In re C.P.* (2023) 91 Cal.App.5th 145, 154-156.)

Throughout the proceedings, DPSS reported that the children were doing well in M.F.'s care, and all of their needs were being met in M.F.'s home. The PGPs were willing to adopt the children, and the children were bonded to the PGPs and to their paternal uncle, C., who lived with the PGPs and assisted with the children's care. C. taught B.F. "school-related" topics like counting and recognizing numbers and colors.

At separate section 366.26 hearings for the children in October and November 2021 (§ 366.26), the court terminated the natural parents' legal rights to the children and selected adoption as each child's permanent plan. In the section 366.26 reports, DPSS recommended that the court "deem" or designate the PGPs as the children's PAPs.

5

(§ 366.26, subd. (n)(1).) At the section 366.26 hearings, the court did not designate the PGPs as the children's PAPs but ordered the PGPs' adoption applications to be given preference over other applications.

B. *Concerns About J.F.'s Substance Abuse*

At the section 366.26 hearing for B.F. on October 1, 2021, minor's counsel said she had "some concerns" about J.F.'s alcohol use. Minor's counsel noted that the mother opposed placing B.F. with M.F. in March 2020 because the mother thought J.F. might have an "alcohol issue." Minor's counsel also pointed out that, according to the preliminary adoption assessment[4] for the PGPs (§ 366.21, subd. (i)(D)), J.F. admitted drinking "eight beers regularly on a Friday." When asked about J.F.'s alcohol use for the preliminary adoption assessment, M.F. said she was concerned about J.F.'s alcohol use early during their over 30-year marriage, but she later realized J.F. was "nonviolent" and did not "become drunk." The court ordered DPSS to conduct five alcohol and drug tests for J.F.

J.F. was required to drug test on October 19, and on November 2, 5, 19, and 22, 2021. On October 19, J.F. tested positive for methamphetamines and amphetamines. J.F. tested negative for all substances on November 2 and 22, but J.F. did not drug test on November 5 and 19. On November 17, the social worker spoke with J.F. about the drug test requirements. J.F. "was upset," "became angry," and began "yelling" at the social worker in the presence of M.F., C., and the children. The social worker told J.F. that

_____

[4] The preliminary adoption assessment is not part of the record on appeal.

DPSS had to be sure the children would be safe before it moved forward with the adoption process. J.F. said he regretted being honest with the adoption worker about his alcohol use because the drug tests were placing him at risk of losing his job. On November 17, J.F. submitted a saliva drug test sample that was too small to produce test results.

On November 22, 2021, the social worker asked J.F. about his positive drug test on October 19. J.F. denied using "any illegal substances" and reported taking Vicodin (hydrocodone) for severe knee and back pain. J.F. was then placed on random drug testing. In a random drug test on December 17, J.F. tested negative for all substances. The record does not show whether J.F. took any random drug tests after December 17, or when J.F. took the hair follicle test showing "high levels of methamphetamine"—the reason for DPSS's March 11, 2022 emergency removal of the children from M.F.'s care. In status reports filed in December 2021 and January 2022, DPSS reported that the PGPs, C., and the children all shared a strong bond, and DPSS had "no concerns" about the care the children were receiving in the PGPs' home.

C. *The March 11, 2022 Emergency Removals*

As noted, on March 11, 2022, DPSS filed two JV-326 forms (notice of emergency removal), one for each child, stating, "[t]he child . . . is being removed from the home of the prospective adoptive parent due to methamphetamine used by the PAP grandfather,

[J.F.]  He submitted a [hair] follicle test and produced high levels of methamphetamine."[5]

DPSS also filed two JV-326 forms (proof of notice under section 366.26(n)), one for each child, stating that M.F. was given notice of the emergency removals "*orally, in person*" on March 11.  The proofs of notice (forms JV-326) did not show that M.F. was given (1) copies of the notices of emergency removal forms (JV-324) that were filed on March 11, (2) blank copies of the objection to removal forms (JV-325), or (3) copies of the request for prospective adoptive parent designation forms (JV-321) for each child.[6]

On March 25, 2022, M.F. filed an objection to removal form for each child (JV-325), requesting a hearing on the March 11 removals and claiming the children would suffer "psychological" and "emotional" harm the longer they were separated from the PGPs' family.  The court never held a hearing on the removals.  On August 17, 2022, orders were filed, changing the designated educational rights holder for the children from M.F. to new caretakers.[7]

---

[5]  The record on appeal does not contain a copy of the hair follicle test or indicate when J.F. took the hair follicle test.

[6]  The proof of notice forms (JV-326) showed minor's counsel was notified of the removals "by electronic service" at 1:06 p.m. on March 11.

[7]  On March 25, 2022, the day M.F. filed her objections (JV-325), the court held an initial hearing on two requests by the children's paternal uncle, C.:  (1) a section 388 petition to change the section 366.26 orders and appoint C. as the children's legal guardian, and (2) a request by C. to be designated as the children's de facto parent.  The court continued the matters to April 27, and ordered DPSS to investigate them and file a report before April 27.  The record does not include C.'s petition or de facto parent request, or a report by DPSS on the requests.  The record also does not indicate whether the court ever ruled on the matters.  M.F. was present at the March 25 hearing, but her objections to the removals were not discussed at that hearing.

D. *M.F.'s Section 388 Petitions*

On September 1, 2022, M.F., through an attorney, filed a section 388 petition for each child, asking the court to return the children to her care. In attached declarations, M.F. averred she was not "served with any notices or court forms" when the children were removed on March 11 or at any other time. M.F. explained that she and C. "went down to the courthouse to inquire into whether we could do anything" and were informed that they could file a JV-325 "Objection to Removal" form. M.F filed two objection forms on March 25.

On September 7, 2022, the juvenile court signed orders denying the section 388 petitions without a hearing but stated its reasons for denying the petitions in its orders. The court indicated that M.F. was notified of the removals on March 11; M.F. filed "untimely objections" on March 25; and, "moreover," a hearing on the removals was discretionary, not mandatory, under section 366.26, subdivision (n)(3). M.F. appeals from the orders denying her section 388 petitions.[8]

III. DISCUSSION

M.F. claims the juvenile court abused its discretion in denying her section 388 petitions for a hearing on the children's March 11, 2022 emergency removals. M.F. argues that the court's decision rests on an error of law, namely, that she was provided

---

[8] The orders denying M.F.'s section 388 petitions to return the children to her care are appealable under section 395, subdivision (a). (*In re Shirley K.* (2006) 140 Cal.App.4th 65, 69-71; *In re Daniel C.* (2006) 141 Cal.App.4th 1438, 1443-1445; cf. § 366.28, subd. (b)(1) [A posttermination "order that a dependent child is to reside in, be retained in, or be removed from a specific placement, is not appealable," unless, among other things, "[a] petition for extraordinary writ review was filed in a timely manner."].)

with "proper notice" of the emergency removals. M.F. claims she was not given proper notice of the removals on March 11, or thereafter; thus, (1) the five court-day to seven calendar-day period for filing objections and requesting a hearing on the removals did not commence; (2) her March 25 objections were, therefore, timely filed; and (3) the court was required to hold a hearing to determine whether the children should be returned to her care. Alternatively, M.F. argues that DPSS's failure to properly notify her of the removals was good cause to extend the period for filing objections to and requesting a hearing on the removals. (§ 366.26, subd. (n)(4).)

For the reasons we explain, we agree that the section 388 orders must be reversed and the matter remanded for an evidentiary hearing to determine whether, based on the circumstances at the time of the hearing, the removals "should be made permanent" or the children should be returned to M.F. (*State Dept. of Social* Services, *supra*, 162 Cal.App.4th at pp. 286-287.)

A. *Standard of Review*

Section 388 allows a person having an interest in a dependent child of the juvenile court to petition the court to change, modify, or set aside a prior order on the grounds of changed circumstances or new evidence. (§ 388, subd. (a).) A section 388 petition is the appropriate means of challenging a prior order based on a lack of " 'proper' " notice of the proceedings resulting in the prior order. (*In re Daniel F.* (2021) 64 Cal.App.5th 701, 711.) A section 388 petition must make a prima facie showing of entitlement to relief in order to trigger the right to an evidentiary hearing on the petition. (*In re R.A.* (2021) 61 Cal.App.5h 826, 836.) The petition may be denied without a hearing "only if the

10

[petition] fails to reveal any change of circumstance or new evidence which might require a change of order." (*In re Jeremy W.* (1992) 3 Cal.App.4th 1407, 1413-1414; § 388, subd. (d) ["If it appears that the best interests of the child . . . may be promoted by the proposed change of order . . . , the court shall order that a hearing be held . . . ."]; see rule 5.570(a) ["A petition for modification must be liberally construed in favor of its sufficiency."].)

We review the summary denial of a section 388 petition for an abuse of discretion. (*In re R.A.*, *supra*, 61 Cal.App.5th at p. 836.) "A trial court abuses its discretion when it applies the wrong legal standard or its factual findings are not supported by substantial evidence." (*Edwards Wildman Palmer LLP v. Superior Court* (2014) 231 Cal.App.4h 1214, 1224.) Put another way, "a disposition that rests on an error of law constitutes an abuse of discretion." (*In re Charlisse C.* (2008) 45 Cal.4th 145, 159.) When "the issue on appeal involves the interpretation and proper application of the dependency statutes," our review is de novo. (*In re Anthony Q.* (2016) 5 Cal.App.5th 336, 344.)

B. *M.F. Is Entitled to a Hearing on the March 11, 2022 Emergency Removals*

　　1. Legal Principles

At a section 366.26 hearing, the juvenile court selects and implements a permanent plan for the dependent child. (*In re C.P.*, *supra*, 91 Cal.App.5th at p. 153.) The permanent plan choices, in order of preference, are: " '(1) terminate parental rights and order that the child be placed for adoption . . . ; (2) identify adoption as the permanent placement goal and require efforts to locate an appropriate adoptive family; (3) appoint a legal guardian; or (4) order long-term foster care.' " (*Ibid.*, quoting *In re Celine R.*

11

(2003) 31 Cal.4th 45, 53; see § 366.26, subd. (c)(1).) Adoption requires terminating the natural parents' rights to the child; guardianship and long-term foster care leave existing parental rights intact. (*In re Autumn H.* (1994) 27 Cal.App.4th 567, 574.)

After parental rights are terminated at a section 366.26 hearing, and before an adoption petition for a child is granted, the social service agency is "responsible for the care and supervision of the child" and is "entitled to the exclusive care and control of the child . . . , except as specified in subdivision (n)" of section 366.26. (§ 366.26, subd. (j).) Subdivision (n) confers standing on a caretaker who has been designated, or who meets the "threshold criteria" for being designated, as a child's "prospective adoptive parent" or PAP, to challenge an agency's decision to remove the child from the caretaker's home by petitioning the juvenile court to hold a noticed hearing on the removal. (*Wayne F. v. Superior Court* (2006) 145 Cal.App.4th 1331, 1336-1341 (*Wayne F.*), discussing Senate Bill No. 218 (2005-2006 Reg. Sess.) § 1, the legislation that added subdivision (n) to § 366.26; Stats. 2005, ch. 626, § 1, eff. Jan 1. 2006.); see *In re M.M.* (2015) 235 Cal.App.4th 54, 60.)[9]

---

[9] "The addition of subdivision (n) to section 366.26 was intended to address a legislative concern that an unjustified agency action removing a minor from a long-term caregiver might not be in the child's best interest." (*State Dept. of Social Services*, *supra*, 162 Cal.App.4th at pp. 284; *In re L.M.* (2019) 39 Ca.App.5th 898, 910.) Before subdivision (n) was added to section 366.26 in 2005, courts interpreted subdivision (j) of section 366.26 as requiring juvenile courts to give "considerable deference" to an agency's posttermination placement and removal decisions. (*Wayne F.*, *supra*, 145 Cal.App.4th at pp. 1336-1339, discussing *In re Harry N.* (2001) 93 Cal.App.4th 1378, 1397 (*Harry N.*); *In re M.H.* (2018) 21 Cal.App.5th 1296, 1306-1307.)

Although the agency's discretion was not unfettered, the juvenile court could not overrule the agency's decision absent a clear showing that the agency abused its

*[footnote continued on next page]*

DPSS does not dispute, and the record shows, that M.F. met the threshold criteria to be designated as the children's PAP at the time of the section 366.26 hearings in 2021 and when the children were removed on March 11, 2022. A caretaker meets the "threshold criteria" to be designated as a PAP if (1) the child has lived with the caretaker for at least six months, (2) the caretaker currently expresses a commitment to adopt the child, and (3) the caretaker has taken at least one step to facilitate the adoption process. (§ 366.26, subd. (n)(1)-(2), (3)(B).) Steps to facilitate the adoption process include "cooperating with an adoption home study." (*Id.* at subd. (n)(2)(B).) As M.F. points out, she and J.F. "cared for both children for more than a year and a half, expressed a commitment to adoption, and obviously cooperated with an adoption home study, as RFA approval came in April 2021."

The court may designate a caretaker as a PAP at the section 366.26 hearing or at any time thereafter, regardless of whether the agency has proposed to remove or has

discretion. (*Department of Social Services v. Superior Court* (1997) 58 Cal.App.4th 721, 733 (*Dept. Soc. Serv.*). According to *Harry N.*, this required a showing that the agency's decision was " 'patently absurd' " or " 'unquestionably not in minor's best interests.' " (*Harry N.*, at p. 1397.) The juvenile court could not "substitute its independent judgment" for that of the agency. (*In re Shirley K.*, *supra*, 140 Cal.App.4th at p. 72; *Dept. Soc. Serv.*, at p. 724.)

Now, however, subdivision (n) of section 366.26 requires the juvenile court to independently determine, in a hearing on the removal, what placement will serve the child's best interest. (*Wayne F.*, *supra*, 145 Cal.App.4th at pp. 1336-1341; § 366.26, subd. (n)(3)-(4).) Subdivision (n) strengthens judicial oversight over an agency's removal decisions during the critical period after parental rights are terminated and before the child is adopted. (*T.W. v. Superior Court* (2012) 203 Cal.App.4th 30, 34, 45-47 [Under subdivision (n), "[t]he juvenile court has the authority and responsibility to determine whether removal from the home of a prospective adoptive parent is in the child's best interests."].)

removed the child from the caretaker. (§ 366.26, subd. (n)(1); rule, 5.726.) The court is required to hold a hearing on a removal, upon a timely petition by a participant, including a caretaker who is a designated or qualifying PAP, and the caretaker has a right to present evidence and argument at the hearing. (*Wayne F.*, *supra*, 145 Cal.App.4th at pp. 1339-1341.) At the hearing, the agency has the burden of proving by a preponderance of the evidence that the proposed nonemergency removal, or the emergency removal, is in the best interest of the child. (Rules 5.727(g), 5.728(f).)

Subdivision (n) of section 366.26, and rules 5.727 and 5.728, set forth different notice requirements for nonemergency and emergency removals, although the same hearing procedures apply to both types of removals. (§ 366.26, subd. (n)(3)-(4); rules 5.727-5.728; *State Dept. of Social Services*, *supra*, 162 Cal.App.4th at p. 285.) Subdivision (n)(3) and rule 5.727 govern nonemergency removals; subdivision (n)(4) and rule 5.728 govern emergency removals. At a hearing on either type of removal, "the agency . . . must prove by a preponderance of the evidence that the removal is in the best interest of the child." (Rules 5.727(g), 5.728(f).)

In a nonemergency removal, the child is not at "immediat[e] . . . risk of physical or emotional harm" (§ 366.26, subd. (n)(4)); hence, the agency may not remove the child from the home of a caretaker who is a designated or qualifying PAP without giving advance notice of the "proposed removal" to the court, the caretaker, the child's attorney, and other participants, if any. (§ 366.26, subd. (n)(1)-(3)). The notice must be given "[p]rior to a change in placement and as soon as possible after a decision is made" to remove the child. (§ 366.26, subd. (n)(3); rule 5.727(b).) The agency "must provide

notice" of the proposed removal "on *Notice of Intent to Remove Child* (form JV-323)[,]" and, "[a] blank copy of *Objection to Removal* (form JV-325) and *Request for Prospective Adoptive Parent Designation* (form JV-321) must also be provided to all participants" entitled to notice, "except the court." (Rule 5.727 (b) [Participants to be Served with Notice], (c) [Form of Notice].) The notice must be served "by first-class mail or by electronic service." (Rule 5.727(d).) In addition, "*Proof of Notice Under Section 366.26 (n)* (form JV-326) must be filed with the court before the hearing on the proposed removal." (Rule 5.727(d)(5).)

A period for filing objections to and requesting a hearing on a nonemergency, proposed removal begins to run on the date the caretaker or other participant is served with notice of the proposed removal: "Within five court days or seven calendar days, whichever is longer, of the date of notification," each participant who received notice of the proposed removal "may file a petition with the court" objecting to and requesting a hearing on the proposed removal, "or the court, upon its own motion, may set a hearing regarding the proposal." (§ 366.26, subd. (n)(3)(A); rule 5.727(e).) The court may, for good cause, extend the filing period. (*Ibid*.) "A request for hearing on the proposed removal must be made on *Objection to Removal* (form JV-325)." (Rule 5.727(e)(1).) A caretaker who files an objection and requests a hearing may also file a petition asking the court to be designated as a PAP, by completing and filing form JV-321. (§ 366.26, subd. (n)(3)(A); see rule 5.727(c).) "At the hearing, the court shall determine whether the caretaker has met the threshold criteria to be designated as a prospective adoptive parent . . . , and whether the proposed removal of the child from the home of the designated

15

prospective adoptive parent is in the child's best interest, and the child may not be removed from the home of the designated prospective adoptive parent unless the court finds that removal is in the child's best interest." (§ 366.26, subd. (n)(3)(B).)

In an emergency removal, the agency first determines that the child "must be removed from the home of the caretaker who is or may be a designated prospective adoptive parent immediately, due to a risk of physical or emotional harm . . . ." (§ 366.26, subd. (n)(4).) "[T]he agency may remove the child from that home and is not required to provide notice prior to the removal. However, as soon as possible and not longer than two court days after the removal, the agency shall notify the court, the caretaker who is or may be a designated prospective adoptive parent, the child's attorney [and other participants] of the removal." (*Ibid.*.) "*Notice of Emergency Removal* (form JV-324) must be used to provide notice of an emergency removal . . . ." (Rule 5.728 (c).)

"Whenever possible, the agency, at the time of the [emergency] removal, must give a blank copy of *Request for Prospective Adoptive Parent Designation* (form JV-321) and a blank copy of *Objection to Removal* (form JV-325) to the caregiver . . . ." (Rule 5.728 (c )(4).) "Notice to the court must be served by filing *Notice of Emergency Removal* (form JV-324) and *Proof of Notice Under Section 366.26 (n)* (form JV-326) with the court." (Rule 5.728(c) (5).) The "*Proof of Notice Under Section 366.26 (n)* (form JV-326) must be filed with the court before the hearing on the proposed removal." (Rule 5.728(c)(6).)

The procedures and deadlines for requesting and setting a noticed hearing on a post section 366.26 removal are the same for nonemergency and emergency removals.

16

(§ 366.26, subd. (n)(3)-(4); rules 5.727-5.728.) "Within five court days or seven calendar days, whichever is longer, of the date of notification of the [emergency] removal," the caretaker and other participants "may petition for, or the court on its own motion may set a noticed hearing pursuant to paragraph (3)." (§ 366.26, subd. (n)(4); cf. subd. (n)(3)(A).) The court may, for good cause, extend the filing period. (*Ibid*.)

A request for hearing on an emergency removal must be made on form JV-325 (objection to removal). (Rule 5.728(d)(1).) "The hearing must be set as soon as possible and not later than five court days after the petition objecting to removal is filed with the court." (Rule 5.728(d)(2).) For good cause, the hearing may be set at a later date. (Rule 5.728(d)(2)(C).) At a hearing on an emergency removal, the question the court must determine is not whether the emergency removal was in the child's best interest; it is "whether the removal should be made permanent" in light of the child's best interest at the time of the hearing, rather than at the time of the emergency removal. (*State Dept. of Social Services v. Superior Court*, *supra*, 162 Cal.App.4th at p. 287; see also *In re L.M.*, *supra*, 39 Cal.App.5th at p. 909 ["The overriding goal, embodied in the best-interest standard, is to maximize the child's opportunity to develop into a healthy, well-adjusted adult."]; *T.W. v. Superior Court* (2012) 203 Cal.App.4th 30, 34 [In determining whether a removal is in a child's best interest, the court must "give considerable weight" to the public policy against placement in a home in which a family member has a substance abuse problem.].)

2. <u>Analysis</u>

M.F. claims her section 388 petitions to return the children to her care were erroneously denied and that the matter must be remanded for a hearing to determine whether the children's best interests would be served by returning them to M.F. We agree.

M.F. was entitled to "notice" of the removals at the time of or no later than two court days after the removals, pursuant to the notice requirements for emergency removals. (§ 366.26, subd. (n)(4); rule 5.728 (c).)[10] In her section 388 petitions, M.F. made a prima facie showing that she was not properly notified of the removals. (*Ibid.*)

First, the proof of notice forms (JV-326), filed on March 11, 2022, state that M.F. was given notice of the emergency removals "orally, in person" on March 11. DPSS was required to "use" form JV-324 to provide M.F. with "notice" of the emergency removals, and to give the notice "by telephone or by personal service of the form." (Rule 5.728 (c)(2).) "Telephone notice must include the reasons for removal as indicated on the form, and notice of the right to object to the removal." (Rule 5.728 (c)(3).) The proofs of notice (form JV-326) do not indicate that DPSS orally notified M.F. of the reasons for the removals or of M.F.'s right to object to and request a hearing on the removals. In her

_____

[10] In her briefing, M.F. argues she was entitled to be given notice of the emergency removals pursuant to the notice procedures for *nonemergency* removals prescribed in section 366.26, subdivision (n)(3) and rule 5.727. She claims DPSS was required to give her a copy of form JV-323 (*Notice of Intent to Remove Child*), the form the agency must use to give *advance* notice of a nonemergency, proposed removal. (Rule 5.727(c).) M.F.'s reliance on the notice requirements for nonemergency removals is misplaced. The children were removed without advance notice; there was no proposed removal to be considered in a hearing before the removal. (§ 366.26, subd. (n)(3)(B).)

section 388 petitions, M.F. averred she was never "served with any notices or court forms" informing her of her "right to object" and "have a court hearing." (*Ibid*.) Rather, sometime after March 11, M.F. went to the courthouse where she learned she could file objections to the removal on form JV-325, and M.F. filed two JV-325 forms, objecting to the removal of each child, on March 25. Additionally, DPSS was required to give M.F. blank copies of forms JV-321 and JV-325 at the time of the removals, if that was "possible." (Rule 5.728(c)(4).) But there is no indication that it was not possible to give these blank forms to M.F. when DPSS claims it "notified" M.F. of the removals "orally, in person" on March 11. Thus, the section 388 petitions, and the entire record, show, prima facie, that M.F. was not properly notified of the children's March 11, 2022 emergency removals. (§ 366.26, subd. (n)(4); rule 5.728(c).)

DPSS argues it gave M.F. proper notice of the removals "orally, in person" on March 11 because rule 5.728 did not *require* DPSS to *personally serve* M.F. with the notice of removal form JV-324, or blank copies of forms JV-325 and JV-321, at the time of the removals. DPSS reasons that, while "service of notice for proposed removals must be by either first class mail or by electronic service" (rule 5.727(d)(1)), "[s]ervice of notice for emergency removals must be by *either* telephone *or* by personal service of the form" (rule 5.728(c)(2)). "Additionally, while rule 5.727 states that the agency must provide notice of [nonemergency] proposed removals on form JV-323 as well as blank copies of JV-325 and JV-321, rule 5.728 does not. . . . Instead, rule 5.728 . . . states that, '[w]henever possible, the agency at the time of the removal, must give [blank copies of

19

forms JV-321 and JV-325] to the caregiver.' . . . Thus, unlike rule 5.727, these forms are not required to be served under rule 5.728."

This argument disregards the plain language of Rule 5.728: "*Whenever possible*, the agency, at the time of the removal, must give a blank copy of [forms JV-321 and JV-325] to the caregiver . . . ." (Rule 5.728(c)(4), italics added.) Forms JV-321 and JV-325 are required to be given to the caregiver at the time of the removal, unless it is not possible to do so. (*Ibid*.) On this record, there is no apparent reason why it was not possible for DPSS to give M.F. blank copies of forms JV-321 and JV-325. Further, DPSS did not give M.F. *telephonic* notice of the removals (rule 5.728 ( c)(3)); it notified M.F. of the removals "orally, in person." There is no apparent reason why DPSS was unable to give M.F. a copy of the notice form JV-324 that DPSS filed on March 11, 2022, or to at least orally inform M.F. of the reasons for the removals, as stated on the JV-324 form, at the time DPSS orally notified M.F. of the removals.

DPSS does not claim that it (1) told M.F. about her right to object to, and request a hearing on, the removals "orally, in person," on March 11, or thereafter; (2) made any attempt to give M.F. copies of forms JV-324, JV-325, or JV-321, at any time; or (3) was not "possible" to personally serve M.F. with the forms on March 11. DPSS does not suggest that a DPSS worker would testify, at a hearing on the section 388 petitions, that M.F. was orally notified of her right to file objections; that DPSS somehow tried to serve M.F. with forms JV-324, JV-325, and JV-321; or that giving M.F. the forms was somehow impossible. Thus, it is not appropriate to remand the matter for a hearing to determine whether M.F. was properly notified of the removals. M.F. has made a prima

facie evidentiary showing that she was not properly notified of the removals (§ 366.26, subd. (n)(4); rule 5.728 (c)), and DPSS has pointed to no evidence indicating that M.F. was properly notified of the removals. Instead, the facts relevant to whether M.F. was properly given notice are uncontroverted and show that M.F. was not properly notified.

The failure to properly notify M.F. of the removals means that the five court-day to seven calendar-day period for filing objections to and requesting a hearing on the removals (§ 366.26, subd. (n)(4)) did not commence; thus, M.F.'s March 25 objections were timely filed. Alternatively, the lack of notice to M.F. constituted good cause for the court to extend the five court-day to seven calendar-day filing period and deem M.F.'s March 25 objections timely filed. (§ 366.26, subd. (n)(4); see *In re Rashad B.* (1999) 76 Cal.App.4th 442, 446-450.) Further, the court was required to hold a hearing on the removal, within five court days of March 25, the day the objections were timely filed; holding a hearing on the removals was not discretionary with the court. (*Wayne F.*, *supra*, 145 Cal.App.4th at p. 1339; rule 5.728(d)(2).) Thus, the matter must be remanded for a hearing to determine whether the removals "should be made permanent" or the children should be returned to M.F.'s care, based on the children's circumstances and best interests at the time of the hearing. (*State Dept. of Social Services*, *supra*, 162 Cal.App.4th at pp. 286-287.)

## IV. DISPOSITION

The September 7, 2022 orders denying M.F.'s section 388 petitions requesting the juvenile court return the children to M.F.'s care are reversed. The matter is remanded to the juvenile court with directions to hold a noticed hearing (§ 366.26, subd. (n),

21

rule 5.728) to determine whether the children's March 11, 2022 emergency removals "should be made permanent" based on the children's circumstances and best interests at the time of the hearing following remand.

CERTIFIED FOR PUBLICATION

FIELDS
J.

We concur:

RAMIREZ
P.J.

MENETREZ
J.